EAVES–BROOKS COSTUME
COMPANY, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 86–08–01035.

United States Court of
International Trade.

Decided Oct. 25, 1988.

Arnold & Porter, Duane K. Thompson, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice (Michael T. Ambrosino), New York City, for defendant.

Coudert Brothers (Robert L. Eisen and Margaret R. Polito), New York City, for amicus curiae, Malabar Ltd.

## OPINION

MUSGRAVE, Judge.

### BACKGROUND

Plaintiff Eaves–Brooks, a domestic supplier of opera and theater costumes, initiated this action pursuant to 19 U.S.C. § 1516(c) to contest the denial of its petition to the U.S. Customs Service seeking the reclassification of imported theater and opera costumes. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(b).

The merchandise which is the subject of this action consists of opera costumes manufactured by Malabar, Ltd., a Canadian company, and rented to the Kentucky Opera Association for use in a production of "The Abduction from the Seraglio." The merchandise was entered into the United States at Buffalo, N.Y. on February 27, 1986 as Entry No. 835099, and was liquidated by Customs duty-free under the "Re-

galia" provision found in Item 851.30 TSUS.

Plaintiff contends that the classification of the subject merchandise under the "Regalia" provision is incorrect and that the merchandise should be classified as "Wearing Apparel and Accessories" under Schedule 3, Part 6, TSUS.

Defendant United States, while contesting the allegation of the complaint, expressly concurs in the jurisdiction of the Court.

■ Malabar Limited ("Malabar") moved for leave to file a brief as *amicus curiae* and also moved to dismiss the complaint on the grounds of lack of jurisdiction, alleging that Eaves–Brooks is not an "interested party" under 19 U.S.C. § 1516(a)(2). Section 1516 provides that an "interested party" may file a petition to contest the classification and rate of duty imposed upon certain designated imported merchandise. "Interested party" is defined in the statute as, *inter alia*, "(A) a manufacturer, producer, or wholesaler in the United States ... of goods of the same class or kind as the designated imported merchandise." Malabar contends that only opera costumes for a specific opera (and by implication, similar or identical to those manufactured by Malabar) constitute goods of the same class or kind. But *amicus curiae* acknowledges that Eaves–Brooks is a manufacturer of opera costumes, and even in its disparagement of Eaves–Brooks makes it clear that *amicus* considers plaintiff a competitor, or at least a potential competitor; since both manufacture opera costumes, Malabar's adversarial stance alone would tend to support the proposition that plain-

tiff manufactures goods of the same class or kind as Malabar. Malabar's assertion that "[t]he relevant market and identity of purchasers before the Court are limited to opera companies that are producing 'The Abduction from the Seraglio' "[1] is, at best, specious. Because the merchandise which is the subject of this action consists of opera costumes, the only proper inquiry is whether Eaves–Brooks is a manufacturer or producer of opera costumes and not whether it manufactured the exact costumes contained in the entry or entries which triggers or trigger the right to commence this action.

Malabar urges the Court to follow the holding of this Court in *Libbey Glass, Division of Owens Illinois, Inc. v. U.S.*, 9 CIT 31 (1985), and to dismiss this action based on the proposition that plaintiff is not an "interested party;" however, this is a non sequitur, for in *Libbey Glass* the Court dismissed a portion of a complaint because the plaintiff had not designated a particular item in its *petition* to Treasury. Here, plaintiff's petition designated all imported opera and theater costumes. It is undisputed that plaintiff is a domestic manufacturer of opera costumes; thus plaintiff is a domestic manufacturer of goods of the same class or kind as the designated imported merchandise. As such, plaintiff is an "interested party" as defined by § 1516(a)(2).

■ It is not necessary, however, to pursue this line of inquiry as Malabar has no standing, as an *amicus curiae*, to file a dispositive motion; that privilege is reserved to parties in interest in the case.[2] Accordingly, Malabar's motion to dismiss

---

**1.** Malabar's brief at p. 16.

**2.** The Court is not unaware of the broad statement contained in 3 ACJS 432 that "An *amicus curiae* may move to dismiss a proceeding for want of jurisdiction ..." but considers that averment over-broad; the sole citation in support of the statement is a case in which the plaintiff had specially invited the participation of an *amicus curiae* "as if the [*amicus*] were a party." The Court also concurs in the propriety and appropriateness of *amicus curiae's* raising the question of jurisdiction, which question the Court has considered. While it is not dispositive of the issue of jurisdiction, it is instructive to note that both parties to the litigation agree that the Court has jurisdiction.

The friend of the Court asserts lack of jurisdiction, and cites *Stewart Warner Corp. v. U.S.*, 4 CIT 141, [1982 WL 2261], (1982) in support of its position. That support is misplaced. In *Stewart Warner* the Court expressly *denied amicus* a "general right of participation" where it appeared that the purpose was to accomplish indirectly what could not be attained directly. In that case, as in this, *amicus* sought to be an intervenor, rather than *amicus curia*.

will not be entertained by the Court. It may also be noted that Malabar cannot directly intervene in the case, such intervention being proscribed by 28 U.S.C. § 2631.

## DISCUSSION

Turning to the merits of the case, the issues have been defined by a Stipulation of Facts in Lieu of Trial (and an amendment thereto), which Stipulation has been approved by the Court. It is stipulated, *inter alia,* that:

1) The costumes, the duty-free importation of which is protested by Eaves–Brooks, were manufactured by Malabar Limited and rented to the Kentucky Opera Association for a production of Mozart's opera "The Abduction from the Seraglio."

2) The Kentucky Opera Association is a non-profit organization.

3) The costumes were admitted by the U.S. Customs Service duty free under TSUS 851.30, "Regalia."

4) Kentucky Opera did use the costumes in a performance of an opera for which usual admission fees were charged.

5) Plaintiff is a New York company which offers costumes of the same class or kind as those supplied by Malabar and used by the Kentucky Opera in its public performance of the Mozart opera referred to.

Plaintiff presents two arguments in support of its position:

1) that the opera costumes were employed for a "commercial use" as proscribed by the Headnotes to Schedule 8, Part 4, TSUS.

2) that the opera costumes do not constitute "Regalia" as defined by Headnote 2 to Schedule 8, Part 4, TSUS.

The superior heading of Item 851.30, TSUS reads in relevant part:

"Articles imported for the use of ... any non-profit institution established for educational ... purposes, or for the encouragement of the fine arts." [3]

Headnote 2 to Schedule 8, Part 4, TSUS defines "regalia" as follows:

"The term 'regalia' as used in this part (items 850.40 and 851.30) embraces only such insignia of rank or office, emblems, or other articles as may be worn upon the person or borne in the hand during public exercises of the institution, and does not include articles of furniture or fixtures, nor regular wearing apparel, nor personal property of individuals."

Headnote 1 to Schedule 8, Part 4, TSUS, provides that to qualify for duty-free entry under Part 4 (which includes Item 851.30), the imported article must be "exclusively for the use of the institution involved, and not for distribution, sale or other commercial use."

A. *Whether the opera costumes were employed for a "commercial use"?*

▮ Plaintiff urges the proposition that the Customs Service erred in allowing duty free importation of the opera costumes on the dual grounds that the costumes (1) were employed for a "commercial use" as proscribed by the Headnotes to Schedule 8, Part 4, TSUS, and (2) were not employed "during public exercises of the institution."

While there is clearly some imprecision in the language of the statute, i.e., "commercial use" and "public exercises" are not defined, the Court is impelled by logic and past practice to reject both bases of plaintiff's argument. Kentucky Opera is a non-profit organization, as evidenced by its Internal Revenue Service exemption, 26 U.S.C. § 501(c)(3), which, while admittedly not entirely dispositive of the issue, is persuasive, as Kentucky Opera would presumably forfeit that exemption if it were to engage in what are commonly called "commercial" activities. In addition, it seems clear that by deleting the word "solely" from the TSUS headnote, as noted above, Congress intended to confer the benefits of 851.30 upon "... *any* non-profit institution established for ... the encouragement of

---

**3.** Before 1966, this heading included the word "solely", i.e., "established *solely* for educational ... purposes ..." (emphasis added). However, by amendment to the TSUS in 1966, the word "solely" was dropped.

the fine arts" such as the Kentucky Opera Association. (Emphasis added.) Kentucky Opera avers (Defendant's Brief, p. 2, Stipulation, Exhibit B & C) and that averment is uncontradicted, that it in fact does not make a profit on its opera presentations, a situation which would generally lead to the demise of a commercial enterprise. Furthermore, its opera presentations are undoubtedly the major, if not the sole, "public exercises" in which it engages.

The Court may take judicial notice of the past practices of many non-profit institutions in staging performances for a fee, or selling prints or other merchandise to the public. While legislators and commentators from time to time question such practices, the society and its elected representatives obviously feel that there is some overall desirable societal result, notwithstanding that commercial enterprises may be seen to have been placed at a competitive disadvantage with respect to such non-profit institutions.

Somewhat the same situation obtains here, as plaintiff states, and neither defendant nor *amicus curiae* deny, that plaintiff is put at a competitive disadvantage by the ability of Malabar to export opera costumes duty free into the United States from Canada while plaintiff cannot export its opera costumes into Canada at all (Stipulation of Facts, No. 4). While this apparent inequity may cry out for redress, there is no remedy available under current U.S. law.

B. *Whether the costumes constitute "Regalia"?*

■ As to whether or not the costumes constitute "Regalia" under the enumerated Tariff Schedule Item, the credentials and knowledge of plaintiff's expert witness are impressive. Robert W. Shuy, Ph.D., set forth twelve definitions of regalia (Plaintiff's appendix C) which were apparently extant, if not in common usage, during the period 1910 to approximately 1930, which was the period during which the tariff legislation under consideration initially was considered and enacted, including the "regalia" provisions. These definitions indicated that the term "regalia" originally referred to symbols of royalty, though its meaning had been expanded to include decorations or insignia of an order or office. According to plaintiff, these definitions show that during this period "regalia" did not include operatic and theatrical costumes. But this overlooks the ongoing evolution and etymological development of the language—and the modification of the regalia provisions since 1930.[4]

The opera costumes which are under discussion seem clearly to fall within the headnote provision: "The term *'regalia'* as used in this part (items 850.40 and 851.30) embraces only such insignia of rank or office, emblems, *or other articles as may be worn upon the person . . .*" (emphasis added).

## CONCLUSION

Accordingly, it is the conclusion of this Court that the Kentucky Opera Association is a non-profit organization as contemplated by TSUS 851.30, that the presentation of an opera in which the costumes were "worn upon the person[s]" performing in the opera was not a commercial use, that the opera presentation was a "public exercise of the institution", that the merchandise in question is "regalia" within the

---

**4.** *See, for example: Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969): ". . . the appellant, in Klan regalia . . ."

*Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 654 F.2d 204 (2nd Cir.1981): ". . . clad in his Superman regalia . . ."

*U.S. v. Osidach*, 513 F.Supp. 51 (E.D.Pa.1981): ". . . the dark blue uniform of the Ukrainian police . . . [he was] in that regalia".

*East Hartford Ed. Assn. v. Bd. of Ed. of Town of East Hartford*, 562 F.2d 838 (2nd Cir.1977): ". . . in the regalia worn in academic processions."

*Mitzner v. Cardet Intern.*, 394 F.Supp. 1119 (N.D.Ill.1975): ". . . in his football regalia . . ."

*National Comics Publications v. Fawcett Publications*, 93 F.Supp. 349 (S.D.N.Y.1950): ". . . the conventional regalia of the gymnast or circus acrobat . . ."

*See also* 10 U.S. Tariff Commission, Tariff Classification Study 64 (1960), which states that the definition of regalia was modified to include the practice, and that the actual scope of the practice was to include as regalia almost any article that satisfied the criteria set forth in the statute.

meaning of the TSUS, and that the merchandise was properly classified under Item 851.30, TSUS. The Court notes the stipulation that the Canadian government does not allow the importation into Canada of opera costumes (if Canadian companies can supply them) but does not find that fact relevant to the legal issues in this case.

Upon the Stipulation of Facts and other papers filed by the parties, the Court finds for the defendant, and the determination by the Customs Service Classification and Value Division, is sustained. It is so ordered.